UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-439-GWU

REBA K. KING,                                                           PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

Reba King brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

>   impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

08-439 Reba K. King

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

08-439  Reba K. King

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

08-439 Reba K. King

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that King,[1] a 47-year-old woman with a high school education, suffered from impairments related to a history of idiopathic cervical dystonia (torticollis),[2] anxiety, depression, and minimal degenerative disc disease. (Tr. 33, 40). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 38, 40). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 41-42). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 41).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However, the

---

[1] The plaintiff was known as Reba Cress when she initially filed her DIB application and is referred to as Cress in many documents. (Tr. 209). She reverted at some point to her maiden name of Reba King. (Tr. 209).

[2] "A contracted state of the cervical muscles, producing twisting of the neck and an unnatural position of the head." Dorland's Illustrated Medical Dictionary (27th Ed.1988) at 1734.

08-439 Reba K. King

current record also does not mandate an immediate award of Social Security Benefits. Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The hypothetical question initially presented to Vocational Expert Bill Ellis included an exertional limitation to light level work restricted from a full range by such non-exertional limitations as (1) an inability to ever climb ladders or ropes; (2) a need to avoid repetitive overhead lifting; (3) a need to avoid exposure to vibration or hazardous equipment; (4) a limitation to simple instructions and repetitive tasks in a low stress work environment; and (5) a need for no more than "minimal" interaction with the co-workers and no contact with the general public. (Tr. 151). In response, the witness identified a significant number of light level jobs which could still be performed including the job of tester (130,000 national jobs) and packer (176,000 national jobs). (Id.). The ALJ then presented another question including an exertional limitation to light level work restricted from a full range by (1) an inability to ever climb ladders, ropes or scaffolds and crawl; (2) an inability to more than occasionally stoop, bend, crouch, or balance; (3) an inability to more than occasionally reach overhead; (4) an inability to more than occasionally twist her neck in any direction; (5) a need to avoid exposure to unprotected heights and hazardous equipment; (6) an inability to operate a motor vehicle; (7) a limitation to

simple instructions with no production rate work; (8) no more than superficial interaction with co-workers or supervisors; and (9) no more than occasional routine work place changes. (Tr. 152). The witness testified that the previously cited jobs could still performed with about a 50 percent reduction in numbers. (Id.). The ALJ relied upon this information to support the administrative decision.

The ALJ erred in evaluating King's physical condition. In determining the plaintiff's residual functional capacity, the ALJ relied heavily upon the opinion of Dr. Michael Balm, a treating neurologist. (Tr. 39). This opinion was issued in January of 2001, at which time the physician indicated that the claimant should "limit overhead repetitive activities or stressful environments." (Tr. 616). Several problems exist with the ALJ's reliance upon this opinion.

First, the court notes that Dr. Balm's opinion was issued in January of 2001, approximately 18 months prior to King's alleged onset date of July 31, 2002 (Tr. 209), and during a time period when the plaintiff was still employed. (Tr. 82). That the claimant was found not to suffer from totally disabling restrictions at this time is not surprising. King's condition could easily have deteriorated during this 18-month time period prior to her alleged onset date. Thus, reliance upon this remote opinion from a time frame when the claimant does not even allege to have been disabled is at best problematic.

08-439 Reba K. King

As noted by King, this January, 2001 opinion was not Dr. Balm's last statement concerning the physical restrictions which afflict her. Records from Dr. Balm, dated between June 20, 2002 and July 31, 2002, indicated that the plaintiff would be restricted from lifting and carrying more than eight pounds and should perform no repetitive pushing or pulling for more than 15 minutes without taking a 15 minute break.[3] (Tr. 1448). These limitations would restrict the claimant to a limited range of sedentary level work and were never considered by the vocational expert. These later restrictions, contemporaneous with King's alleged onset date, undercut the earlier limitations upon which the ALJ relied. Thus, Dr. Balm does not provide support for the administrative denial decision.

The administrative regulations at 20 C.F.R. § 404.1527(d)2) require an ALJ to state the reasons for rejecting the opinion of a treating source and the agency's failure to follow its own procedural regulations can constitute reversible error. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ did not address Dr. Balm's summer of 2002 limitations. (Tr. 30A-42). The ALJ

---

[3]This note was contained in Exhibit 43F. (Tr. 1448). This exhibit contains three prescription pad notes from Dr. Balm which have all been photocopied onto the same page. The exhibit indicates these notes are dated from June 20, 2002 to July 31, 2002. (Tr. 1448). The section containing the aforementioned physical restrictions is not dated and is somewhat different in format from the other two notes. Neither the ALJ nor the defendant has questioned that this is the opinion of Dr. Balm and, so, the court will not question it.

10

08-439  Reba K. King

should at least have noted reasons why this treating doctor's limitations were not adopted.  Therefore, a remand of the action for further consideration is required.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the court must grant the plaintiff's summary judgment motion to this extent and deny that of the defendant.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 31st day of August, 2009.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

11